## ATCHISON, T. & S. F. RY. CO. et al. v. RAILROAD COMMISSION OF TEXAS et al.

No. 8015.

Court of Civil Appeals of Texas. Austin.
Oct. 31, 1934.

Rehearings Denied Nov. 11, 1934.

Terry, Cavin & Mills, of Galveston, Robert Harrison, Thompson & Barwise, and Allen & Gambill, all of Fort Worth, G. E. Hamilton, of Matador, King, Mahaffey, Wheeler & Bryson, of Texarkana, Fred L. Wallace, of Fort Worth, and G. B. Ross and Joyce Cox, both of Galveston, for appellants.

Jas. V. Allred, Atty. Gen., and T. S. Christopher, Asst. Atty. Gen., for appellee Railroad Commission of Texas.

774

T. D. Gresham, R. S. Shapard, and Samuel Lancaster, all of Dallas, and J. H. Tallichet, of Houston, for appellees interveners.

BAUGH, Justice.

This suit was brought by the Atchison, Topeka & Santa Fé Railway Company, and twelve other railway companies operating in Texas, against the Railroad Commission and the Attorney General of Texas, attacking the validity of an order of the Railroad Commission, dated January 5, 1932, and to enjoin the enforcement thereof, which order required said railroads, plaintiffs below and appellants here, to establish joint through rates and routes and the interchange of traffic thereon between said appellants, as railroad companies, and three organizations known as motor transport companies, viz.: The T. & P. Motor Transport Company, the M. K. & T. Transportation Company, and the Southern Pacific Transport Company. In this suit the T. & P. Motor Transport Company, joined by the T. & P. Railway Company, and the Southern Pacific Transport Company, joined by the T. & N. O. Railway Company, intervened. A temporary injunction was granted by the trial court, but was, after a hearing thereon, and upon motion of the interveners, dissolved; a permanent injunction was refused, and all relief sought by appellants was denied. From this judgment the plaintiff railroad companies have appealed.

The order of the Railroad Commission attacked grew out of the following facts and circumstances: In order to meet truck competition with the railroads on short hauls, the T. & P. Railway Company, in 1929, through the agency of the Motor Transport Company, inaugurated a pick-up and/or delivery service at warehouses or store door of shippers of less than carload lots of freight on intrastate shipments over its lines; the cost thereof at point of origin and destination being absorbed in the freight charged for such transportation. Its method of doing so was as follows: Organization of a Delaware corporation with a capital stock of $10,000, all of which was owned by the T. & P. Railway Company. This corporation secured a permit to do business in Texas, and by contract with the parent railway company provided the service in question. It had no property and furnished the pick-up and delivery service through employment and use of local draymen and truckmen. The agents and employees of the T. & P. Railway Company were likewise to be agents and employees of the Motor Transport Company.

The Motor Transport Company had no physical properties. Bills of lading were issued by the Motor Transport Company in its name as carrier, and the parent railway company purported to act as its agent in the carriage of the goods between railroad points. The pick-up at point of origin and delivery to the railway company station, and the delivery from railway cars to the door of the consignee at destination, were the only services rendered by the Motor Transport Company. All profits, if any, of the transport company were paid to the parent railway company.

The M. K. & T. Transportation Company was similarly organized as a Delaware corporation with a capital stock of $25,000, owned by the parent railway company, and similarly operated over the parent railway company's lines.

The Southern Pacific Transport Company was organized as a Texas corporation with 1,000 shares of no-par value stock, 995 of which were owned by the parent railway company, and similarly operated over the Southern Pacific lines.

Subsequent to the organization of the above-named companies, which had been successfully operated, and for the purposes of rendering a like service to shippers over their respective lines, numerous other railroad lines operating in Texas undertook to render such pick-up and/or delivery service on less than carload shipments, but elected to render that service themselves as railroad carriers, issuing their own bills of lading, exchanging traffic, etc., under existing tariffs as fixed by the Railroad Commission.

The question was soon raised as to what was the status of these separately organized transport companies, and whether they were subject to regulation by the Railroad Commission as carriers. This question was referred to the Attorney General, who advised that said companies were subject to regulation by the Railroad Commission as express companies under the provisions of articles 3860–3866, R. S. 1925. The Railroad Commission thereupon assumed supervision of said companies. The appellant railroads, however, refused to recognize said companies as common carriers, or as express companies, and questioning the powers of the Railroad Commission to supervise and regulate them, declined and refused to enter into any arrangements for the establishment of through routes and rates and the interchange of traffic thereon. Thereupon the Railroad Commission promulgated the order here attacked, requiring appellants to do so on the ground

that such refusal by the appellant railroads to deal with or accept shipments from said transport companies created an abuse and an unjust discrimination against shippers, which it was authorized under articles 6445, 6448, and 6474, R. S. 1925, to correct. If such transport companies are carriers and authorized to operate under the methods adopted by them in conjunction with their parent railroad companies, and are subject to the jurisdiction of the Railroad Commission, it is not denied that the refusal of appellant railroads to interchange freight traffic with them creates a discrimination as between shippers over such joint routes, subject to regulation by the Railroad Commission. Neither the transport companies nor their parent railroad companies are complaining of the commission's order.

Though appellants set forth several grounds of attack on the validity of said order, they may in substance be reduced to the following: (1) That the jurisdiction of the Railroad Commission to require interchange on through rates, routes, and billings of freight is limited to railroad companies as such, and that the transport companies cannot be so considered nor so classified. (2) That said transport companies are not in fact nor in law express companies, and that the commission had no power to require appellants at great expense to themselves to deal with them as such. (3) That such order is unlawful, unjust, and arbitrary as to appellants, in that it forces upon them needless expense in employing additional accounting employees, and in publishing additional tariffs in dealing with said transport companies, besides those required and necessary to be published in dealing with the parent railroad companies themselves.

While we are inclined to the view that the Railroad Commission had no jurisdiction of said transport companies, on the ground that they were express companies, the basis on which it originally assumed to regulate them and require interchange with other railroad companies, if in fact and in law the commission were entitled to assert its jurisdiction over them on other grounds, it would not be deprived of that jurisdiction and power to regulate same on such erroneous assumption. Under the conclusion we have reached, such classification by the commission becomes immaterial.

Just why the parent railroad companies caused to be organized separate corporations to render this pick-up and/or delivery service to its shippers is not made to appear. As owned, controlled, and operated, however, they constituted but a step in the process of transportation of such freight over the railroads. As such they possessed no separate legal individuality from their parent railroads. Southern Pac. Terminal Co. v. I. C. C., 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310. To permit railroads to perform such steps in the process of transportation through other separate legal entities created and owned by them would enable them to defeat the jurisdiction of the commission over such transportation. And in such case where the stock of such separate corporation is owned by the railroad company, and its sole function is merely to help conduct the business of the parent corporation under whose complete control it operates, and in the instant case largely, if not wholly, through the same employees, the subsidiary corporation will be treated as if it were a mere department of the railroad itself. U. S. v. Lehigh Valley R. R. Co., 220 U. S. 257, 31 S. Ct. 387, 55 L. Ed. 458.

The contracts whereby the transport companies undertook to make such railroads their agents in such transportation of freight were clearly ineffective to change the status of either the freight or the railroads in the premises, to in any wise affect the liability of the railroads in the process of moving such freight, or to remove the transportation of such freight in this manner from the jurisdiction of the Railroad Commission over it. The purported contracts between the transport companies and their owner railroad companies constituted but a fiction in the railroad companies' transportation service. Obviously, they neither added to nor detracted from the primary liabilities and obligations of the railroad companies themselves with reference to such freight; and such freight delivered to or by the transport companies was in legal effect delivered to and by the railroad companies themselves. In legal effect, therefore, such transport companies, being separate entities in name only, need not be considered as separate legal entities in contemplation of law, but merely as a department of the railroads themselves. As stated in Chicago, M. & St. P. R. R. Co. v. Minneapolis C. & C. Assoc., 247 U. S. 490, 38 S. Ct. 553, 557, 62 L. Ed. 1229: "In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." This, in ef-

fect, is what the Railroad Commission did in its order and which, under the uncontroverted facts of this case, we think it clearly had the legal right to do. Under such circumstances we think the controversy here presented becomes one largely of form in methods of handling the character of shipments involved, rather than one of material substance. This conclusion renders unnecessary a discussion of the issues made by appellants as to the source, character, and extent of the regulatory powers of the Railroad Commission as derived from the Constitution and the statutes. Those powers have been repeatedly before the courts, and the commission's power to regulate interchange of traffic between connecting carriers, to prevent discrimination, and correct abuses where same exist is no longer an open question.

■ The remaining question is whether such order is unjust, unfair, unreasonable, and arbitrary as to appellants, in that it requires them to incur added expense in the compilation, publication, and distribution of tariffs in interchange of freight with such transportation companies eo nomine which would be unnecessary if the parent railroad companies alone were dealt with; in that it requires additional accounting expenses to appellants in handling such business; and in that it requires additional expense to appellants in the investigation of claims arising from such interchange of shipments. The latter item of expense is predicated upon the contention of appellants that said transport companies are not members of the freight claim division of the American Railway Association, not bound by its stringent rules with regard to investigation of such claims, not financially responsible, and that therefore appellant lines could not rely upon the investigation of such claims made by the transport companies, but would be required to make at their expense independent investigation of their own. Our conclusion that the acts of the transport companies are in fact and in law but the acts of the intervening parent railroads themselves renders this contention immaterial.

■ The estimated additional accounting expense to appellant was predicated largely upon the assumption that the freight in less than carload lots handled through pick-up and/or delivery service would be handled, listed, accounted for, and reported as express, and not as freight. Likewise, under our conclusion above announced, such shipments so interchanged would not in any manner change their character as freight to that of express, and such additional contemplated expenses to appellants in this regard in complying with the commission's order would be wholly unnecessary.

■ As to the additional expense in publishing tariffs for shipments interchanged between appellants and the transport companies, it appears that the rates applicable were identical with rates applicable between appellants and the parent railroads themselves, and required merely the adding of the names of the transport companies to existing published tariffs, a matter involving a negligible amount of additional work or expense to appellant companies. That being true, there is in legal contemplation nothing unreasonable in the commission's order which would render it invalid because of such requirement.

We have not undertaken to discuss the numerous propositions presented by appellants. They, in one form or another, but present different phases of the questions above discussed, and what we have said disposes of the issues presented. Finding no error in the trial court's judgment, it is accordingly affirmed.

Affirmed.